UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>JERAMY JAMES FRERIKS ,<br><br>        Defendant. | CASE NO.3:10-CR-0106-TMB-DMS<br><br>**FINAL REPORT AND RECOMMENDATION[1] REGARDING DEFENDANT'S MOTION TO SEVER COUNTS**<br>**[Doc. 25]** |

## I. MOTION PRESENTED

Defendant Jeramy Freriks (hereafter Freriks) is charged with four counts of forgery of securities in violation of 18 U.S.C. § 513(a), one count of unlawful possession of five or more documents or authentication features in violation of 18 U.S.C. § 1028(a)(3), (b)(1)(A), and (b)(1)(B), one count of aggravated identify theft in violation of 18 U.S.C. § 1028A(a)(1), and one count of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). His co-defendant in this case, Rodney Lee Drake, is charged with one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and one count of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).

Freriks filed this motion at Docket 25 requesting that the Court sever Count 7 of the

---

[1] This report and recommendation is being issued as a final report and recommendation. Pursuant to Fed. R. Crim. P. 59(b)(3), any objections will be considered by the District Court Judge who will accept, reject, or modify the recommendation, or resubmit the matter to the Magistrate Judge for additional consideration and recommendations.

1

indictment from Counts 1-6 of the indictment. He argues that Count 7 is improperly joined based on the face of the indictment because it does not meet the requirements of Rule 8(a) of the Federal Rules of Criminal Procedure. In the alternative, he argues that Count 7 should be severed from Counts 1-6 pursuant to Rule 14 of the Federal Rules of Criminal Procedure because joinder will result in prejudice to his case.

The Government opposes the motion. It argues that Count 7 is properly joined with Counts 1-6 under Rule 8 because the allegations in all seven counts are part of a common scheme or plan and that severance under Rule 14 is not warranted in this case.

## II. COUNTS 1-7 OF THE INDICTMENT

Count 1:
On or about January 13, 2008, within the District of Alaska, the defendant, JERAMY JAMES FRERIKS, did make, utter and possess a forged security of an organization, to wit: HSBC Bank, with the intent to deceive another person and organization. All of which is in violation of Title 18, United States Code, Section 513(a).

Count 2:
On or about December 8, 2007, within the District of Alaska, the defendant, JERAMY JAMES FRERIKS, did make, utter and possess a forged security of an organization, to wit: Alaska USA Federal Credit Union, with the intent to deceive another person and organization. All of which is in violation of Title 18, United States Code, Section 513(a).

Count 3:
On or about December 16, 2007, within the District of Alaska, the defendant, JERAMY JAMES FRERIKS, did make, utter and possess a forged security of a state and political subdivision thereof, to wit: State of Alaska, Alaska Permanent Fund Division, with the intent to deceive another person, organization, and government. All of which is in violation of Title 18, United States Code, Section 513(a).

Count 4:
On or about December 4, 2007, within the District of Alaska, the defendant, JERAMY JAMES FRERIKS, did make, utter and possess a forged security of an organization, to wit: Bank of America, with the intent to deceive another person and organization. All of which is in violation of Title 18, United States Code, Section 513(a).

2

Count 5:
On or about January 15, 2008, in the District of Alaska, the defendant, JERAMY
JAMES FRERIKS, did knowingly possess with intent to use unlawfully five or more
identification documents not issued lawfully for the use of the defendant, authentication
features, and false identification documents [specifics of documents omitted for purposes of this
recommendation] that were possessed in and affecting interstate and foreign commerce, and were
and appeared to be a driver's license and personal identification card, and the offense involved
the production of more than five identification documents, authentication features, and false
identification documents. All of which is in violation of Title 18, United States Code, Section
1028(a)(3), (b)(1)(A) and (b)(1)(B).

Count 6:
On or about January 15, 2008, in the District of Alaska, the defendant, JERAMY
JAMES FRERIKS, did knowingly possess and use, without lawful authority, a means of
identification of another person during and in relation to a violation 18 U.S.C.
§ 1028(a)(1). All of which is in violation of Title 18, United States Code, Section 1028A(a)(1).

Count 7:
On or about January 15, 2008, in the District of Alaska, defendant JERAMY
JAMES FRERIKS did knowingly possess, in and affecting interstate and foreign
commerce, firearms and ammunition, to wit: a Hi-Point 9 millimeter semi-automatic
pistol, serial number P1215959, and 6 rounds of 9 millimeter ammunition, having
previously been convicted of a crime punishable by imprisonment for a term exceeding
one year [details of prior conviction omitted for purposes of this recommendation]. All of which
is in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

### III. BACKGROUND FACTS[2]

On January 15, 2008 a housekeeper at America's Best Suites, located on Spenard Road in

Anchorage, Alaska, found a nine millimeter semi-automatic handgun underneath a pillow in

room number 105. (Tr. at 8, 10). The room had been registered the prior night to Rodney Drake.

(Tr. at 9).

Ms. Rastopsoff and the person working at the front desk, Ms. Gengly Cortez, called the

police about the gun. An Anchorage Police Department (APD) officer responded to the call.

---

[2] These facts are taken from the evidentiary hearing conducted in relation to a separate motion filed by Freriks. The hearing was held on February 8, 2011. The transcript is located at Docket 34. The facts are listed here for background purposes only.

3

The officer took possession of the firearm and left the hotel. (Tr. at 9, 61). Shortly thereafter, one of the men linked to room 105, later identified as Freriks, came back to the front desk of the hotel to inquire about the gun. (Tr. at 10, 21, 64). Ms. Cortez reported that she told the man that the housekeeper had already cleaned the room and declined to give him a key to get back in, so the man left. (Tr. at 64-65).

Shortly after the APD officer had left the hotel and about the time the man returned, the APD officer checked the name Rodney Drake and discovered that he had outstanding felony warrants. (Tr. at 61). The officer called the women at the hotel and asked that they contact the APD if anyone came back for the gun. The women told the officer that someone had just come back for it and that he was just leaving the hotel parking lot in a red SUV turning eastbound on Spenard Road. (Tr. at 11).

The APD began looking for the red SUV. An officer spotted the vehicle and at that point the vehicle began to elude him. (Tr. at 11-12). The officer was not able to stay with the red SUV, but it was eventually spotted again around International and Spenard Roads. The vehicle stopped at the Millennium Hotel in Anchorage and the occupants attempted to flee on foot. (Tr. at 12). Officers apprehended the two men—Freriks and Drake—who ran from the vehicle.

Pursuant to the arrest of Freriks and Drake, the APD officers obtained evidence that is the basis for the charges in this case. Specifically, on Freriks, the officers found counterfeit Alaska driver's licenses bearing Freriks's picture but listing different names. (Tr. at 13). They also found a number of personal checks in the names of other people, some of which were linked to the licenses found. (Tr. at 13). After obtaining a search warrant for the red SUV, the officers found a backpack that contained stolen mail and additional counterfeit identification cards. (Tr.

4

at 13-14). They also found a brown bag that contained the personal effects of Drake and a holster for a revolver, a package of ammunition, and 53 grams of cocaine. (Tr. at 14). The revolver that fit in the holster was found in the glove compartment. (Tr. at 14).

## IV. DISCUSSION

Rule 8(a) of the Federal Rules of Criminal Procedure provides for the joinder of separate offenses. It states as follows:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged – whether felonies or misdemeanors or both – [1] are of the same or similar character, or [2] are based on the same act or transaction, or [3] are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a). Rule 8(a) is broadly construed in favor of initial joinder in the courts mainly because Rule 14 is available for any prejudice that may develop while the trial is in progress. See United States v. Jawara, 474 F.3d 565, 573 (9th Cir. 2007) (quoting United States v. Friedman, 445 F.2d 1076, 1082 (9th Cir. 1971).

In this case, the Government invokes one of the three bases for joinder in Rule 8(a): it argues that Counts 1-7 were all part of a common scheme or plan.

In the Ninth Circuit, multiple counts are generally part of a "common scheme or plan" when the counts "grow out of related transactions." Jawara, 474 F.3d at 574. More specifically, courts asks whether the commission of one offense led to or depended upon the other, or whether proof of one act necessarily constituted or depended upon proof of the other. Id. See also United States v. Anderson, 642 F.2d 281, 284 (9th Cir. 1981) ("When the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate.").

Freriks argues that the indictment fails to allege any facts that would allow this Court to

5

find Count 7 relates to Counts 1-6 as part of a common scheme or plan. He argues that the Court is limited to examining the face of the indictment and cannot rely on representations by the Government about what evidence will be introduced at trial. Based on Ninth Circuit precedent, Freriks is correct: this Court must look to the face of the indictment when determining whether joinder is proper under Rule 8. United States v. Terry, 911 F.2d 272, 276 (9th Cir. 1990) ("Because Rule 8 is concerned with the propriety of joining offenses in the indictment, the validity of the joinder is determined solely by the allegations in the indictment.").

The Government argues that the Ninth Circuit, in United States v. Jawara, 474 F.3d 565 (9th Cir. 2007), readily admitted that it looks to matters outside the indictment when looking at Rule 8 joinder issues. It thus argues that this Court can consider the overlapping evidence linking Count 7 to the first six counts even if such evidence is not articulated in the indictment. The Government asserts that the defendant's possession of the firearm, alleged in Count 7, is linked to the fraud charges because Freriks bought a holster for the firearm using a stolen checkbook and fake identification. It therefore argues that based on the evidence it plans to introduce at trial the firearm possession charge in Count 7 is part of the larger common plan related to fraud and identity theft.

This Court has closely examined the Ninth Circuit precedent and disagrees with the Governments assessment of Jawara. The Court in Jawara reaffirmed that validity of joinder is determined solely by the allegations in the indictment. It stated that during appellate review of Rule 8 joinder issues there is no need to assess what actually happened in the trial because the indictment itself governs. As the Government noted, the Ninth Circuit admitted that it has not always been consistent with the application of this principle and, in at least two cases, it has

looked at the evidence from trial. But the Court in Jawara nonetheless reaffirmed its adherence to the principle:

> Though on occasion, our decisions have noted matters outside of the indictment, the established rule in this circuit is that a valid basis for joinder should be discernable from the face of the indictment, and we remain faithful to that principle here.

Jawara, 474 F.3d at 572-73.

In Jawara, the defendant was charged with one count of fraud related to his asylum application and another count of conspiracy to commit marriage fraud to avoid the immigration laws. Ninth Circuit determined that while the two counts had a common theme of immigration-related charges, they were not part of a common scheme. The court clearly stated that it was restricting its inquiry to the allegations in the indictment. Id. at 574. It found that it could not infer a common scheme or plan because the indictment did not provide a discernible link between the two offenses and that nothing in the indictment suggested that there would necessarily be overlapping evidence.

The Government stresses that the Ninth Circuit will examine whether joined counts have overlapping evidence when looking at joinder under Rule 8(a). But this Court notes that the overlapping evidence must be discernable from the face of the indictment, at least enough for the Court to infer that there will necessarily be evidence in common between the two counts. This Court cannot simply accept the Government's representation of what will be the evidence at trial. While this Court understands that the Government may very likely link the gun possession to the identity theft and fraud charges given what was shared about the evidence in the Government's briefing, it must follow Ninth Circuit precedent and look solely at what can be discerned or inferred from the indictment itself.

7

Looking at the indictment, this Court cannot identify a common scheme or plan connecting Count 7 with Counts 1-6. The only allegation possibly connecting all seven charges is that they all took place between December of 2007 and January of 2008. More specifically, the indictment alleges that the violations in Count 5 and Count 6 took place the same day as the violation in Count 7. But this temporal relationship alone cannot allow this Court to infer that the gun possession was linked to the fraud scheme. Jawara, 474 F.3d at 575 (noting that a close temporal relationship alone is not a sufficient condition for joinder but that a lack of any temporal connection time can nonetheless be significant when finding that joinder was improper).

Even if this Court were to go outside the indictment and rely on evidence the Government reports links the gun possession charge with the fraud charges, this Court cannot conclude all seven counts were part of a common scheme. The evidence linking the gun crime with the fraud crimes is not *necessary* to prove the gun possession charge or the fraud charges, and the evidence linking the crimes together does not convince this Court that the proof of the fraud charges constitutes a substantial portion of the gun possession charge (or vice versa). See Terry, 911 F.2d at 276 (looking at whether the evidence necessary to prove one of the counts overlapped with evidence necessary to prove the other two joined counts); United States v. Montes-Cardenas, 746 F.2d 771, 776 (11th Cir. 1984) ("Two crimes are connected together if the proof of one crime constitutes a substantial portion of the proof of another."). Cf. United States v. Portac, Inc., 869 F.2d 1288, 1294 (9th Cir. 1989) ("Joinder is proper when the same facts must be adduced to prove each of the joined offenses.").

This Court therefore concludes that Count 7 is improperly joined with Counts 1-6 and

8

should be severed. Because it finds severance appropriate based on misjoinder under Rule 8, it need not address the issue of prejudicial joinder under Rule 14 of the Federal Rules of Criminal Procedure.

## V. CONCLUSION

Based on the foregoing analysis, this Court respectfully recommends that the Motion to Sever Counts be GRANTED.

DATED this 11th day of April, 2011, at Anchorage, Alaska.

/s/ Deborah M. Smith
DEBORAH M. SMITH
United States Magistrate Judge

Pursuant to Fed. R. Crim. P. 59(b)(2) and D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **CLOSE OF BUSINESS, April 15, 2011.** Pursuant to Fed. R. Crim. P. 59(b)(3), objections will be first considered by the District Court Judge who will then accept, reject, or modify the recommendation, or resubmit the matter to the Magistrate Judge for additional consideration. Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-89 (9th Cir. 1980), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation. United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **CLOSE OF BUSINESS, April 18, 2011** The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a). **The shortened objection and response deadlines are necessary due to the looming trial date. D.AK. L.M.R. 6(a) authorizes the court to alter the standard objection deadlines.**